**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| FERNANDO DIAZ, individually and on behalf of all others similarly situated, | CASE NO. 8:19-CV-02898-JSM-CPT |
| Plaintiff(s), | |
| v. | |
| CREDIT PROTECTION ASSOCIATION, LP. | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO FRCP 12(B)(6) MOTION TO DISMISS**

Now Comes Plaintiff, FERNANDO DIAZ ("Plaintiff"), by and through his undersigned attorney, and submits the following Response in opposition to a FRCP 12(b)(6) Motion to Dismiss filed by Defendant CREDIT PROTECTION ASSOCIATION, LP:

**I.   Introduction & Summary of Facts**

Plaintiff is a resident of Tampa, Florida. Complaint, Dkt. 1, ¶1. Plaintiff has filed this civil action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq*. Defendant CREDIT PROTECTION ASSOCIATION, LP ("Defendant" or "CPA") is a "debt collector" as defined by Section 1692a(6) of the FDCPA because CPA routinely uses the United States Postal Service for the collection of consumer debts. *Id*. at ¶5.

Plaintiff obtained internet services (the "Subject Debt") from Frontier Communications. Plaintiff incurred the Subject Debt for personal and household expenses. Dkt. 1, ¶14. When Plaintiff could not pay the Subject Debt, CPA attempted to collect the Subject Debt. *Id*. at ¶¶15, 18. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because CPA regards her as a "person obligated or allegedly obligated to pay" the Subject Debt. *Id*. at ¶16.

In an attempt to collect the Subject Debt, CPA sent a Postcard to Plaintiff on or about November 6, 2019. Dkt. 1, ¶18. Similar to an envelope, the Postcard was folded and sealed shut for the purpose of protecting the contents of the Postcard from being read by persons other than the recipient. *Id.* at ¶¶19-20. Just like an envelope, in order to review the contents of the Postcard, Plaintiff was required to unseal the Postcard and did so by ripping open a perforated end of the Postcard. *Id*. at ¶21. The Postcard violated Section 1692f(8) because the contained the following words on the front of the Postcard: "**IMPORTANT INFORMATION ENCLOSED**". *Id*. at ¶22.

Section 1692f of the FDCPA generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f(8) specifically prohibits a debt collector from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

Section 1692f(8) contains no exceptions – any extraneous text on the envelope-  or on the outside of a postcard violates 15 U.S.C. § 1692f(8).

CPA tries to downplay the impact of the words "**IMPORTANT INFORMATION ENCLOSED**" (and loses credibility in doing so) by removing the bold and capitalized font that it used on the Postcard. Dkt. 10, p.2. This is an odd approach for CPA to take when it is clear that it *purposefully printed these words* on the Postcard knowing that words – and how they are formatted – have an impact on how consumers' review and open debt collection communications. For example, upon information and belief, CPA plausibly placed the words "**IMPORTANT INFORMATION ENCLOSED**" on postcards like the one in question to hundreds of consumers in this District, in an attempt to cause consumers to induce consumers like Plaintiff to open postcards, read the contents of the postcards, and pay the subject debts. Dkt. 1, ¶29. Further, upon

information and belief, CPA has determined that it collects more money from consumers when it

sends letters with the words, "**IMPORTANT INFORMATION ENCLOSED"** on the face of the

letters. Dkt.1, ¶30. Lastly, upon information and belief, CPA has determined that least

sophisticated consumers are more likely to open postcards sent with the words "**IMPORTANT**

**INFORMATION ENCLOSED"** than postcards that do not contain the words "**IMPORTANT**

**INFORMATION ENCLOSED."** *Id*. at ¶31.

A redacted image of the front of the Postcard (as depicted in Paragraph 33 of the

Complaint) is depicted below:



As discussed below, CPA's use of the words "**IMPORTANT INFORMATION**

**ENCLOSED"** on the outside of the Postcard violated Section 1692f(8) of the FDCPA. *Preston*

*v. Midland Credit Mgmt*., 2020 U.S. App. LEXIS 1775 (7th Cir. Jan. 21, 2020).

When Plaintiff received the Postcard, his attention was drawn to the fact that it said "**IMPORTANT INFORMATION ENCLOSED**." Dkt. 1,¶24. After reading these words, Plaintiff immediately opened the Postcard in order to read the contents of the Postcard. *Id*. at ¶25. CPA knew (or should have known) that it was a violation of Section 1692f(8) of the FDCPA for CPA to include the words "**IMPORTANT INFORMATION ENCLOSED**" on the outside of the Postcard  because CPA is familiar with the prohibitions of Section 1692f of the FDCPA. *Id*. at ¶27. CPA is familiar with the prohibitions of 1692f of the FDCPA because CPA was recently sued for sending postcards to consumers to collect debts. In February of 2018, CPA was for sending debt collection postcards to consumers in violation of Section 1692f(7) of the FDCPA in the case of *McRobie v. Credit Protection Association*, 18-cv-00566 (E.D. Penn.). *Id*. at ¶28. Section 1692f(7) prohibits "[c]ommunicating with a consumer regarding a debt by post card".

As discussed below, CPA's Motion and incorrectly rest on the argument that the objected to phrase "Important Information Enclosed" does not violate Section 1692f(8) of the FDCPA because the words are "innocuous". Dkt. 10, p. 2. This argument ignores the fact that the prohibitions of Section 1692f(8) clearly prohibit the types of words that CPA used. Accordingly, CPA's Motion to Dismiss should be denied.

## II.   Argument

### A.  Summary of the FDCPA

Congress enacted the FDCPA in 1977 in order to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Pub. L. No. 95-109, § 802(e), 91 Stat. 874, 874 (codified at 15 U.S.C. § 1692(e)). To achieve those ends, the FDCPA imposes various requirements on debt collectors' debt collection activity. Relevant here is Section 1692f, which

provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Section 1692f goes on to states that the "following conduct is a violation of this section" and enumerates eight specifically prohibited practices. In particular, Section 1692f(8) prohibits a debt collector from "using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that [it] is in the debt collection business." 15 U.S.C. § 1692f(8). To ensure compliance with Section 1692f(8) and the FDCPA's other requirements, Congress provided a private right of action. 15 U.S.C. § 1692k(a).

### B. No Court in the Eleventh Circuit Has Addressed Whether a Debt Collector Violates Section 1692f(8) of the FDCPA by including the Words "IMPORTANT INFORMATION ENCLOSED" on the Postcard

CPA cannot point to any authority within the Eleventh Circuit that holds that a debt collector my place the words "**IMPORTANT INFORMATION ENCLOSED**" on a postcards that is used to collect a debt. CPA, however, attempts to absolve itself from violating the clear prohibitions of Section 1692f(8) by relying on inapposite Southern District of Florida cases that applied a so-called "benign language" exception to Section 1692f(8) where the debt collectors was sued for including a barcode and account number on the face of an envelope. Dkt. 10, pp. 5-6, citing *Valle v. First Nat'l Collection Bureau, Inc*., 252 F. Supp. 3d 1332 (S.D. Fla. 2017) and *Artell v. ARS Nat'l Serv.'s, Inc*., 2016 U.S. Dist. LEXIS 154163 at 6 (S.D. Fla. Nov. 4, 2016).

CPA's heavy reliance on these cases is misplaced, as Plaintiff is not complaining of meaningless umbers being placed on the Postcard. "Words matter" and CPA has placed the words "**IMPORTANT INFORMATION ENCLOSED**" on the Postcard to help cause Plaintiff to take notice of the Postcard and increase the odds that he will read the contents and pay the Subject Debt. For example, on information and belief, CPA plausibly placed the words "**IMPORTANT**

**INFORMATION ENCLOSED**" on postcards like the one in question to hundreds of consumers in this District, in an attempt to cause consumers to induce consumers like Plaintiff to open postcards, read the contents of the postcards, and pay the subject debts. On information and belief, CPA has determined that it collects more money from consumers when it sends letters with the words, "**IMPORTANT INFORMATION ENCLOSED**" on the face of the letters. On information and belief, CPA has determined that least sophisticated consumers are more likely to open postcards sent with the words "**IMPORTANT INFORMATION ENCLOSED**" than postcards that do not contain the words "**IMPORTANT INFORMATION ENCLOSED.**"  See Dkt. 1, ¶¶29-31.

Congress passed the FDCPA in order to "arm[] consumers with a shield against the overly zealous debt collector" and to prevent the "many cunning ways [debt collectors may try] to circumvent [the FDCPA] under cover of technical compliance." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32 (2d Cir. 1996). *See also*, *Forsberg v. Fidelity Nat'l Credit Serv. Ltd.*, Case No. 03-cv-2193, 2004 U.S. Dist. LEXIS 7622, 2004 WL 3510771, at *6 (S.D. Cal. Feb. 26, 2004) (suggesting that defendant debt collector's "bluffing" in an "attempt to pressure and intimidate plaintiff" would constitute a violation of § 1692e(10)); Cacace Lucas, 775 F. Supp. 502, 506 (D. Conn. 1990) (entering summary judgment for plaintiffs in FDCPA case under § 1692e where debt collector inaccurately threatened that if it brought action against plaintiffs, then the commencement of litigation would automatically cause attachment of plaintiff's property); *Rosa v. Gaynor*, 784 F. Supp. 1, 4 (D. Conn. 1989) (holding that a letter that created a "false sense of urgency" and listed "intimidating" and "bullying" remedies was unlawfully deceptive).

CPA tries to downplay *why* it chose to risk violating the clear prohibitions by trying to argue that the phrase "**IMPORTANT INFORMATION ENCLOSED**" "reveals [no]thing about

the alleged correspondence." Dkt. 10, p. 6. That is an impressive statement to make where it is clear as day that CPA placed these words on the Postcard to influence Plaintiff to tear open the Postcard to reveals the so-called "**IMPORTANT INFORMATION ENCLOSED**".

CPA's attempt to downplay why it used the word in question and how the words *could* be interpreted runs afoul with the law. Courts have cautioned that "judges are not good proxies for the unsophisticated consumer." *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) (internal quotations omitted). "Unsophisticated readers may require more explanation than do federal Judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque" to the unsophisticated consumer. *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)).

As noted directly below, using similar types of words in an attempt to collect a debt has been held to violate Section 1692f(8). *Preston v. Midland Credit Mgmt.*, 2020 U.S. App. LEXIS 1775 (7th Cir. Jan. 21, 2020).

## C. Defendant Violated Section 1692f(8) of the FDCPA by including the Words "IMPORTANT INFORMATION ENCLOSED" on the Postcard

In *Preston v. Midland Credit Mgmt.*, 2020 U.S. App. LEXIS 1775 (7th Cir. Jan. 21, 2020), the Seventh Circuit held that a debt collector violated Section 1692f(b) of the FDCPA when it placed the words "**TIME SENSITIVE DOCUMENT**" on the envelope containing a debt collection letter. According to the court, "Mr. Preston submits that the plain language of § 1692f(8) prohibits any language or symbol, other than the debt collector's business name or address, from appearing on the envelope containing a debt collection letter. We agree." *Preston,* 2020 U.S. App. LEXIS 1775, *9. The court then held as follows: "[o]n its face, the prohibition is clear: use of *any* language or symbol on an envelope, except for the debt collector's name (if it does not indicate

that the collector is in the business of debt collection) and the debt collector's address, violates

subsection (8)." *Id.* at *11.

    *Preston* explained the prohibited conduct set forth by Section 1692 was clearly intended to

*balance* the ability of debt collectors to use the mail to collect debts, on one hand, and *protect the*

*rights of consumers*:

> The statutory language does, in fact, prohibit debt collectors from sending
> communications to consumers in envelopes bearing symbols that are indicative
> of debt collection. The language of the statute simply draws a clear line to
> ensure that consumers' rights are not lost in the interpretation of more subtle
> language.
>
>                * * *
>
> In providing certainty, this provision furthers the FDCPA's overall purpose of
> "eliminat[ing] abusive debt collection practices by debt collectors" and
> "insur[ing] that those debt collectors who refrain from using abusive debt
> collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).
>
> In sum, the meaning of § 1692f(8) is clear: When a debt collector communicates
> with consumers through the mails, it may not use any language or symbol on
> the envelope except for its business name or address, as long as the name does
> not indicate that he is in the debt collection business. Turning to the facts here,
> there is no question that the language "TIME SENSITIVE DOCUMENT"
> appears on the envelope enclosing a communication to a consumer. It is equally
> apparent that the language at issue does not fall within the itemized exception
> set forth in subsection (8): It is not Midland's name nor its address. The
> inclusion of this phrase thus violates § 1692f(8), and the district court erred in
> dismissing the claim set forth in Count I of Mr. Preston's complaint

*Id.* *17-*18.

    Significantly, *Preston* properly rejected the debt collector's main argument: "Midland

maintains that a literal application of § 1692f(8) "would unquestionably lead to bizarre results." It

urges us to adopt the view of our sister circuits in *Strand* and *Goswami*, to hold that subsection (8)

needs clarification, and to look to legislative history to guide our interpretation of that provision.

We turn now to those cases." *Id.* at pp. 11-12. Notably, as explained below in Section III-E, *Preston*

<u>analyzed and rejected the very authorities relied upon by Defendant.</u>

### D.  The Court Should Reject CPA's So-Called "Innocuous" Language Exception

Just like the debt collector in *Preston v. Midland*, CPA's Motion to Dismiss relies heavily on two circuit court cases that have adopted a so-called "benign language" exception to 1692f(8), the Fifth Circuit's opinion in *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004), and the Eighth Circuit's decision in *Strand v. Diversified Collection Services, Inc.*, 380 F.3d 316 (8th Cir. 2004). Dkt. 10, pp. 4-5.

These opinions ignore a hallmark of statutory interpretation - that courts must first look at the "actual language" used in the statute – to determine a statute's plain meaning. *Silva-Hernandez v. U.S. Bureau of Citizenship & Immigration Servs.*, 701 F.3d 356, 363 (11th Cir. 2012).  "Those who ask courts to give effect to perceived legislative intent by interpreting statutory language contrary to its plain and unambiguous meaning are in effect asking courts to alter that language, and courts have no authority to alter statutory language . . . cannot add to the terms of the provision what Congress left out." *Id.* at 361 (quoting *CBS Inc. v. Primetime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001))

Moreover, where the actual language is clear, as is the case with Section 1692f(8), courts are not free to go beyond it. *See, e.g., United States v. Chafin*, 808 F.3d 1263, 1270 (11th Cir. 2015). "[W]here the statutory language is clear and unambiguous, we presume that Congress said what it meant and meant what it said. Indeed, our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks and citations omitted)). Courts should invoke this "absurdity exception" to the plain meaning rule under only the most extraordinary circumstances. The Supreme Court has observed that it "rarely invokes [an absurd results test] to override unambiguous legislation." *Barnhart v. Sigmon Coal Company,* 534 U.S. 438, 460, (2002). A leading treatise on statutory construction explained mat "the absurd results doctrine should be used sparingly because it entails the risk that the judiciary

will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said." 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:07 (6th ed. 2000).

CPA's reliance on *Strand* is misplaced for two reasons. First, the Eighth Circuit in *Strand* was presented with completely different words – and symbols. In *Strand*, the debt collect mailed a collection letter in an envelope where the envelope "displayed a printed corporate logo depicting a grid with an upward-pointing arrow and the initials" of the debt collector and the words "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED". *Strand*, 380 F.3d at 317. *Strand* properly rejected the plaintiff's argument that debt collector violated Section 1692f(8) by including its initials, "DCS", on the envelope. *Id*. at 318-19.

Here, CPA did not use its initials on the Postcard. And even if it did, Plaintiff would not have sued CPA for doing so.  The envelope in Strand also contained words that are not present on the Postcards – the words "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED". If CPA has used the words "PERSONAL AND CONFIDENTIAL", Plaintiff would not object to those words as they are arguably in keeping with the FDCPA's goal of promoting confidential communications regarding the collection of consumer debt. If CPA had used the words "IMMEDIATE REPLY REQUESTED" (it did not), Plaintiff would have objected to these words as these would have been used by CPA to urge consumers to open postcards and such a blatant attempt to influence a consumer would violate the letter of Section 1692f(8) and the spirit of Section 1692f which provides that consumers should not have face "unfair or unconscionable means to collect or attempt to collect any debt"

Second, after being confronted with a handful of truly innocuous symbols and words, the court in *Strand* did not apply a vigorous analysis of the envelope's use of the words "IMMEDIATE

REPLY REQUESTED." Rather, the court simply concluded as follows: "[i]n light of such clear and universal pronouncements on the purpose of the FDCPA, we believe a reading of the word 'name' encompassing initials and logos does not thwart Congressional purpose in any way. By a natural extension, this construction also renders benign the neutral logo and innocuous phrases printed on the DCS envelopes." *Id.* at 318-19.

CPA's reliance on *Goswami* is misplaced for two reasons. First, just like the Eighth Circuit in *Strand*, the Fifth Circuit in *Goswami* analyzed completely different words – the use of "priority letter" on the face of the subject envelope. *Goswami*, 377 F.3d at 491. CPA's envelope contains no such words. Second, *Goswami* erred by finding that Section 1692(f)(8) was "ambiguous" and that the court was "permitted to look to the statute's legislative history and any FTC interpretations of the provision." *Id.* (citations omitted).

*Goswami's* reliance on FTC Staff Commentary in 2004 was highly misplaced given the fact that the FTC Staff Commentary was issued in 1988. The collection industry has evolved since 1988 and the issues confronting the FTC in 1988 are different to what is taking place today and what took place in 2004, when *Goswami* was decided.

More importantly, when the FTC issues a Staff Commentary in December of 1998, the Commentary specifically advised that it was "not a formal . . . rule or advisory opinion" and was "not binding on the Commission or the public." *See* Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 50101 (Dec. 13, 1988). The FTC did not have general rulemaking authority under the FDCPA. *See* 15 U.S.C. § 1692l(d) (2010). Accordingly, courts have held that FTC Commentaries are entitled to little weight:

> The FTC Commentary is not binding on the courts because it is not a formal regulation and did not undergo full agency consideration. Indeed, the Commentary itself states that it "is not a formal trade regulation rule or advisory opinion of the Commission, and thus is not binding on the Commission or the

public."  A federal court therefore can decline to adopt the FTC position. *See Scott v. Jones*, 964 F.2d 314, 317 (4th Cir. 1992).

* * *

Because we find that the FTC Commentary fails to address *comprehensively* the statutory scheme and therefore "falls outside the range of reasonable interpretation of the [FDCPA]'s express language," we cannot give it conclusive weight. *Heintz v. Jenkins*, 514 U.S. 291, 298, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995); *see also Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914, 920 (7th Cir. 2004) (en banc). Indeed, other federal courts, when determining if conduct is unfair or unconscionable, have not used the FTC's test; indeed, they do not mention it.

*McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 764-65 (7th Cir. 2006).

Even if this Court were inclined to follow the FTC Staff Commentary, the court in *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014) properly recognized that "Neither Senate Report 95-382 nor the FTC Staff Commentary supports an exception to § 1692f(8) that would exempt the identifying information in this case." *Id*. at 305.  *Douglass* also criticized the scope of the examples offered by the FTC Staff Commentary, "the examples offered by the FTC, which are similar to those addressed in *Goswami* and *Strand*, bear no relation to the disclosure in this case."  *Id*. The court in *Douglass* concluded 1692f and 1692f(8), in particular, *should be strictly construed to protect consumers* from conduct prohibited by the FDCPA:

As we have stated before, the FDCPA "must be broadly construed in order to give full effect to [Congress's remedial] purposes."  Construing § 1692f(8) in accord with the FDCPA's purposes in § 1692(a), we find the statute not only proscribes potentially harassing and embarrassing language, but also protects consumers' identifying information.

*Id.* at 305-06 (citation omitted).

### E.  The Seventh Circuit in *Preston v. Midland* Rejected the Cases Relied Upon by CPA

As noted above, in contrast to *Goswami*, the Seventh Circuit has recently held that the prohibitions of Section 1692(f)(8) *are clear* and not ambiguous. *Preston*, 2020 U.S. App. LEXIS 1775, *11-*12.  In so holding, the Seventh Circuit recognized that Section 1692(f)(8) should not

be read to allow a parade of horrible to result. Instead, the court recognized that the use of postage symbols and words like "overnight mail" would not run afoul of Section 1692f(8):

> We respectfully disagree with the approach taken by our sister circuits. Adherence to the plain wording of § 1692f(8) does not, as Strand suggests, prohibit the use of a debtor's address. Nor does the language prohibit pre-printed postage or the use of words such as "overnight mail." The section plainly sanctions "use of the mails" to communicate with a debtor and therefore also sanctions the use of the language and symbols required for sending communications through the mail. It does not prohibit markings required by the United States Postal Service such as stamping or affixing language or symbols to ensure the successful delivery of the communication.
>
> We also cannot agree with our sister circuits that the prefatory language of §1692f renders the provision ambiguous. The first sentence of §1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." It next sets forth a nonexhaustive list of conduct that constitutes "a violation of this section." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003) ("Section 1692f states, without qualification, that 'the following conduct is a violation of this section.'"). Each subsection, (1) through (8), sets forth a discrete means of violating the statute, and the elements of each violation are determined by the language of the subsection. *Cf. Turner*, 330 F.3d at 996 (stating that "[w]hether the collection of a debt violates § 1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law," both of which appear in the text of f(1)). Nothing about the prefatory language of § 1692f renders the meaning of subsection (8) ambiguous. Because the statutory language neither leads to absurd results nor is ambiguous, resort to legislative history is neither necessary nor appropriate. *See, e.g., United States v. Silva*, 140 F.3d 1098, 1102 (7th Cir. 1998) ("If the language is unambiguous, we need not resort to legislative history or other sources to glean the legislative intent of the statute.").

*Preston*, 2020 U.S. App. LEXIS 1775, *15-*18.

Finally, CPA urges this court to rely on *Goswami* but the court in *Goswami* erred by relying on the FTC's 1988 Staff Commentary. Dkt. 10, p.5. The *Preston* court correctly held that "[r]esort to agency interpretations similarly is unnecessary when the statutory language is clear." *Preston v. Midland Credit Mgmt.*, 2020 U.S. App. LEXIS 1775, *16 Fn22 (citations omitted). Because Section 1692f(8) is *not* ambiguous, *Goswami* should not have looked at the legislative history or the FTC for guidance.

### III.     Conclusion

As the court in *Preston* correctly noted, "courts "are bound by the language of the statute as it is written" and "are not at liberty to rewrite [the] statute because [we] might deem its effects susceptible of improvement." *Preston*, 2020 U.S. App. LEXIS 1775, *15 (quoting *C.I.R. v. Lundy*, 516 U.S. 235, 252, 116 S. Ct. 647, 133 L. Ed. 2d 611 (1996) (internal quotation marks omitted) (alterations in original)). *Preston* went on to hold, "[i]f the statutory language is unambiguous, and the statutory scheme is coherent and consistent," no further analysis is necessary. *Id.* (quoting, *Kingdomware Techs., Inc. v. UnitedStates*, 136 S. Ct. 1969, 1976, 195 L. Ed. 2d 334 (2016) (internal quotation marks omitted)).

In conclusion, because Section 1692f(8) clearly explains what debt collectors are prohibited from doing – a literal application of Section 1692f(8) is appropriate to protect consumers from overly zealous debt collectors:

> It is not absurd that a law firm that fails for no good reason to  comply with the express mandate of a federal statute governing collection activities should be found liable for having done so.  Moreover, it would not thwart the purpose of the statute - to protect the unsophisticated consumer - to insist that a law firm comply with the notice requirements even if the consumer is subsequently represented.  Indeed, the defendants do not argue that it would thwart that purpose. They argue only that compliance with the notice requirements would not further the purpose of the statute. We need not say whether we agree.  That is not the issue when we are asked to read an unambiguous statute in a nonliteral way. "It is not for us to say whether the means chosen by Congress represent the wisest choice."  It is enough if enforcement of the law Congress passed would not thwart the purpose for which it was passed.

*Huff v. Dobbins, Fraker, Tennant, Joy & Perlstein*, 1999 U.S. App. LEXIS 12055, *16-*17 (7th Cir. 1999) (internal citations omitted).

**WHEREFORE,** for the above reasons, Plaintiff FERNANDO DIAZ respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss.

Respectfully submitted, on behalf of

Plaintiff Fernando Diaz individually
and on behalf of all others similarly situated,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com